```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
MARCUS BROWN,                            :
                    Petitioner,          :
                                         :      04 Civ. 3601 (DLC)
          -v-                            :
                                         :      OPINION & ORDER
DALE ARTUS, Superintendent of Clinton    :
Correctional Facility,                   :
                    Respondent.          :
-----------------------------------------X
```

Appearances:

Pro se petitioner:

Marcus Brown
#01A1632
Clinton Correctional Facility
Box 2001
Dannemora, New York 12929

For respondent:

Andrew M. Cuomo, Attorney General of the State of New York
Ashlyn Dannelly, Assistant Attorney General
Leilani Rodriguez, Assistant Attorney General
120 Broadway, 22nd Floor
New York, NY 10271

DENISE COTE, District Judge:

   Marcus Brown filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on February 13, 2004, challenging his conviction following trial on charges of assault and criminal possession of a weapon. He is serving a sentence of twenty years' to life imprisonment. The petition was referred to the Honorable Kevin N. Fox for a report and recommendation,

which was issued on December 24, 2008 ("Report").  Having considered Brown's objections to the Report, the petition is denied.

BACKGROUND

The evidence at trial, which began on January 18, 2001, showed that Brown shot Augustine Campuzano ("Campuzano") in the stomach in the early morning hours of September 24, 1999, during a confrontation on West 106th Street in Manhattan.  Campuzano and Brown got into an argument about money Campuzano had just paid to another person to get drugs.  This led to a brawl during which, among other things, Brown "sicced" his dog on Campuzano, Campuzano pulled out a knife or box-cutter, and Brown shot Campuzano with his revolver while standing about six feet away.  Campuzano and Brown testified about these events at trial.

During the early morning hours of the following day, Brown shot a second man.  Brown shot drug dealer Juan Carlos Martinez ("Martinez") in the groin while Martinez was fighting with Brown's common-law wife Karen Ryer ("Ryer") on West 107th Street in Manhattan.  Martinez had been drinking heavily, and got into a fight with Ryer, a drug addict who wanted drugs from Martinez.  Martinez's associate Marvin Valentin ("Valentin") joined the fray and kicked Ryer.  Brown then shot Martinez.  Three days later, while Martinez was in the hospital being treated for his injuries, Brown called Martinez, apologized for shooting him,

2

and asked Martinez to tell his friends to stop looking for him. Martinez, Valentin, and Brown each testified about these events at trial.

On October 8, within weeks of the shootings, two police officers and an Assistant District Attorney ("ADA") interviewed Brown. After being advised of his Miranda rights, Brown admitted shooting Campuzano, explaining that Campuzano deserved to get shot since he had kicked Brown's dog and was holding a knife. He also admitted firing at Martinez to save Ryer.

Brown testified in his own defense by providing narrative testimony instead of responding to questions posed by his lawyer. Brown, who volunteered that he had been a criminal all of his life, said that he was opposed to shooting or hurting anyone and was not violent. He explained that Campuzano had pulled out a gun, that Brown's pitbull had clawed Campuzano's hand, and that Campuzano dropped the gun. Campuzano then displayed a knife and kept coming at Brown. Brown did not admit to shooting Campuzano.

Brown also explained that his statements to the ADA and police officers were involuntary since he was speaking to them off the record in an effort to avoid a life sentence and that he had an agreement with them that he would only get a couple of years. Despite objections by the prosecutor and instructions from the court, Brown insisted on adding improper comments. For

3

instance, Brown told the jury that if it found him guilty on any charge he would go to jail for life. He added that the police originally were looking for a person who fit another description.

As for the events of September 25, Brown explained that Martinez and a man named Medina were big drug dealers who had shot people. Brown described the argument between Martinez and Ryer, during which Martinez punched Ryer and Valentin kicked her. Brown said the two men were beating her badly and that Ryer then shot Martinez. He volunteered again that he was facing life in prison for this charge and that everybody who had testified had lied.

Unable to get Brown to follow the court's instructions, the trial court interrupted Brown's testimony and had the jury leave the courtroom. The judge denied the motions by both the prosecutor and defense counsel to strike Brown's testimony. When the jury returned, the judge gave a curative instruction which, in essence, asked it to ignore statements that were appeals for mercy or otherwise irrelevant, and to consider Brown's testimony "to the extent it bears on the relevant facts of this case as to what happened on the two nights in question, as it bears on the statements that have been put into evidence in this case and as it may bear on this defendant's credibility."

4

During cross examination Brown explained that he did not know if Ryer was the person who had shot Martinez.  He stated that he didn't shoot Martinez and he didn't know who did.

The judge's charge to the jury included a self-defense or justification charge for the indictment's attempted murder and assault charges, but not for its gun possession charge.  In describing the justification defense, the trial court told the jury that it must review all of the evidence, and "figuratively put yourself in the shoes of the defendant and consider how the situation appeared to him."  As for Brown's potential sentence, the judge instructed the jury that it should disregard Brown's comments as to what his punishment may be.  The court added,

> I instruct you further that his comments are in error and you may not assume the accuracy of any of what he said with regard to punishment, and indeed, only if and when this defendant would be found guilty would that issue be open for litigation, and I would have to make a determination and I would have to decide under what specific provision of the law the punishment would be applied.

There was no objection to this charge.

Following a series of notes, the jury convicted Brown on January 25, 2001, of first-degree assault (on a recklessness theory) against Martinez; criminal possession of a weapon in the second degree in connection with the Campuzano shooting; and two counts of criminal possession of a weapon in the third degree, one for each incident.  The jury acquitted Brown of the most

5

serious charges against him, including the attempted murders of Campuzano and Martinez and a first degree assault charge stemming from the Campuzano shooting.

Brown was sentenced on March 5 as a persistent violent felony offender to concurrent indeterminate terms of twenty years' to life imprisonment on each count.  The Appellate Division affirmed the conviction on October 8, 2002.  In doing so, it ruled that most of Brown's evidentiary issues on appeal were unpreserved.  It added, however, that if it were to review them, it would find that the trial judge had ruled properly.  It held that the justification charge was proper.  As to the remaining contentions, it held that they were unpreserved, but again added that if it were to review them it would reject them. The Court of Appeals denied leave to appeal on December 20, 2002.

Brown filed a timely federal habeas petition on February 13, 2004.  Pursuant to Brown's request for a stay in order to exhaust state remedies for additional claims, the federal habeas proceedings were stayed on September 22, 2005.  Brown filed a motion pursuant to Section 440.10 of the New York Criminal Procedure Law in December 2005.  That motion was denied, and the Appellate Division denied leave to appeal in February 2007.

In July 2007, Brown filed an application for a writ of error coram nobis in the Appellate Division.  That application

6

was denied, and the Court of Appeals denied leave to appeal on May 7, 2008.  On January 28, 2008, Brown filed an amended petition in federal court, raising, inter alia, ineffective assistance claims regarding trial and appellate counsel for the first time.[1]

The Report was issued on December 24, 2008, recommending that the petition be denied.  Brown submitted timely objections to the Report on January 12, 2009.

## DISCUSSION

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  The court must make a de novo determination of the portions of the report to which petitioner objects.  28 U.S.C. § 636(b)(1); see United States v. Oberoi, 547 F.3d 436, 453 (2d Cir. 2008) (citation omitted).  To accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record."  Wilds v. United Parcel Service, Inc., 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003) (citation omitted).

---

[1] Although the respondent had not objected to the stay of the federal petition so that Brown could exhaust his new claims in state court proceedings, it now asserts that the amended petition's claims of ineffective assistance of counsel are time-barred since they do not relate back to the claims raised in the original federal habeas petition.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214, modified the standard under which federal courts review Section 2254 petitions where the state court has reached the merits of the federal claim.  Habeas relief may not be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §§ 2254(d)(1), (d)(2).  State court factual findings "shall be presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  Id. at § 2254(e)(1).

   The Report does not address the respondent's argument that many of Brown's claims are procedurally barred or untimely.  It instead examines the merits of the issues Brown has raised and recommends that the petition be denied.  Finding no error in the Report's analysis of the merits of these issues, its recommendation is adopted.  A description of Brown's claims, the Report's recommendations, and Brown's objections follows.

1. Evidentiary Rulings at Trial

The petition complains that the trial court improperly limited examination about Martinez's and Valentin's criminal history and prior criminal conduct.  The Report finds that the claim doesn't accurately describe the scope of examination that was permitted at trial and that in any event the trial court ruled properly on the scope of the examinations.  Finding no clear error in the Report's analysis of the petition's claims of evidentiary errors at trial, those claims are rejected.

In his objections to the Report, Brown does not take issue with the Report's analysis of these claims, but does complain that the judge improperly interfered with his own testimony in two ways.  Specifically, he argues that he was not given an adequate chance to explain that his shooting of Martinez did not evince a "total disregard" for the safety of others since Ryer was being viciously assaulted.  As for the possession of a weapon that night, Brown contends that "any normal person in the defendant['s] shoes" would have carried a loaded weapon given what he knew of these violent drug dealers.

These objections are apparently new claims that were not raised in either the petition or the amended petition.  In any event, the trial court did not improperly curtail Brown's description of the events that led him to the Martinez shooting.  Whether these objections are considered as an attack on the

9

trial court's evidentiary rulings, the effectiveness of his attorney's summation, the sufficiency of the evidence, or the propriety of the jury charge on justification, these objections are denied.

2. Jury Charges

The petition complains that the trial judge erred in instructing the jury to disregard his testimony that he faced a life sentence if convicted, in declining to instruct the jury that it must assess the reasonableness of Brown's belief that the use of deadly force was necessary in light of his knowledge of the reputation that Martinez (and his companions on the night of the shooting) had for violence when it was considering the justification defense, in failing to charge the justification defense on the weapon possession charges, and in failing to provide a meaningful response to the jury's question regarding the difference between the first-degree assault charges.  The Report discusses each of these complaints, and properly rejects them.

In his objections to the Report, Brown complains that the judge instructed the jury in its charge at the end of the trial that the defendant was "in error" when he testified about a conviction leading to a life sentence and that the jury shouldn't be concerned about his sentence.  Brown asserts that

10

the judge knew that Brown was facing life imprisonment, and points to two pretrial plea offers that he had rejected. One was for 16 years to life; the other was for 12 years to life.

This objection mischaracterizes the final jury charge, which is recited in relevant part above. The trial court judge correctly instructed the jury that no decision had yet been made as to the sentence the defendant would receive if convicted, and that it should disregard Brown's statements about his potential sentence. This was not error.

3. Prosecutorial Misconduct

The petition complains that the prosecutor committed misconduct at the grand jury proceedings by failing to reveal an inaccurate statement made by a testifying detective, and during summation by vouching for witnesses, attacking the defenses presented by Brown, and characterizing Brown as a liar. As the Report explains, when the record is examined, the summation arguments by the prosecutor were not improper. For instance, the prosecutor argued that Brown had been untruthful about the Martinez shooting, and pointed out that Brown first blamed the shooting on Ryer and then changed his testimony. Similarly, the prosecutor acknowledged the problematic history of its victim-witnesses, but argued that the evidence supported their descriptions of the events on the nights of the shootings.

11

Finally, attacks on grand jury proceedings are not grounds for granting a federal habeas petition. Brown does not object to the Report's analysis of the prosecutorial misconduct claims, and there is no ground for finding that these claims have merit.

4. Joinder of Charges

In his amended petition, Brown argues that the indictment improperly consolidated the charges on the two shootings. The Report properly rejects this claim, and Brown has not objected to its analysis.

5. Ineffective Assistance of Trial Counsel

In his amended petition, Brown argues that trial counsel provided ineffective assistance by urging a justification defense when Brown had testified that he was innocent and had not shot anyone; by allowing Brown to testify in narrative form, which interfered with Brown's ability to present his defense; by not emphasizing sufficiently the inconsistent testimony of the prosecution witnesses who recounted his October 8 admissions to the police and the ADA; by failing to object properly to testimony that Brown owned a dog; and by failing to object to the joinder of charges in the indictment.

The Report recites the governing standard under <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88, 694 (1984), and rejects each of these claims after examining the context in which

counsel acted and the relevant principles of law.  For instance, the Report explains that the decision to permit Brown to testify in narrative form was made at the suggestion of the trial court and to avoid Brown proceeding pro se.  The decision to pursue a justification defense was a reasonable decision to present alternatives to the jury for rendering a verdict favorable to Brown.  As the Report explains as well, defense counsel used the grand jury and pre-trial hearing transcripts to cross-examine the police officer and ADA effectively about Brown's statements to them on October 8.  As a final example, the Report explains that defense counsel argued vigorously but unsuccessfully before trial against consolidation of the charges.

In his objections to the Report, Brown complains of the Report's discussion of only one of his claims that trial counsel was ineffective.  He reasserts that his attorney disregarded Brown's preference for an innocence defense.  This objection may be swiftly denied.  This tactical decision was properly made by trial counsel, and Brown has failed to show that he was prejudiced by it.  Given the overwhelming evidence that he shot both Campuzano and Martinez, the defendant was very significantly aided by his counsel's use of the justification defense: the jury acquitted Brown of the most serious charges in the indictment and it would appear that the justification defense played a significant role in Brown obtaining that

13

favorable verdict.  Brown's claims that his trial counsel was ineffective are denied.

6. Ineffective Assistance of Appellate Counsel

In his amended petition, Brown contends that appellate counsel rendered ineffective assistance by failing to raise as issues on appeal the errors by trial counsel listed above, and by failing to argue that there was insufficient evidence to support his conviction, particularly on the assault charge under a theory of recklessness or depraved indifference.  Because Brown failed to show that error occurred, or that he was prejudiced by the alleged errors, the Report recommends denial of this claim.  In making this recommendation, the Report reviews the elements of each of the crimes for which Brown was convicted and summarizes the evidence against him which supported the verdict.  The Report is correct that this final claim should be denied as well.

In his objections to the section of the Report devoted to the ineffective assistance claim concerning appellate counsel, Brown complains that appellate counsel did not raise trial counsel's (1) decision not to pursue Brown's theory of defense, and (2) untimely motion to challenge the depraved indifference charge underlying the assault conviction.  Brown's argument that appellate counsel should have complained on appeal about trial

14

counsel's pursuit of the justification defense must be rejected for the reasons already discussed above; Brown has not shown deficient performance or prejudice.

Brown does not explain why the evidence did not support a verdict of guilty on the assault charge under a depraved-indifference theory, when that evidence showed that Brown fired into a group of people who were fighting with each other.  This was sufficient to support a finding that Brown acted with depraved indifference under the law as it then stood in New York.[2]  In any event, appellate counsel is entitled to choose among the many potential claims and press those it believes may be most successful on appeal.  Under this standard, Brown cannot show that appellate counsel provided ineffective assistance in making choices among the available arguments to raise on appeal.

---

[2] Under People v. Register, 60 N.Y.2d 270 (1983), and its progeny, the focus of a depraved indifference theory was at the time of defendant's conviction and appeal an objective assessment of the degree of risk presented by the defendant's reckless conduct.  Under Register, the facts "establishing a risk of death approaching certainty . . . likewise demonstrated depraved indifference."  Policano v. Herbert, 507 F.3d 111, 115 (2d Cir. 2007) (citing Policano v. Herbert, 7 N.Y.3d 588, 600-01 (2006)).  This principle of law applied as of the date the jury was charged at Brown's trial in January 2001.  See Policano, 507 F.3d at 113-14.  With its decision in People v. Feingold, 7 N.Y.3d 288 (2006), the Court of Appeals overruled Register and held that depraved indifference to human life was a culpable state of mind.  United States v. Legros, 529 F.3d 470, 474 (2d Cir. 2008) (citing Feingold's definition of depraved indifference).  Feingold does not apply retroactively. Policano, 7 N.Y.3d at 603.

CONCLUSION

The January 23, 2008 amended petition for a writ of habeas corpus is denied. In addition, the Court declines to issue a certificate of appealability. Brown has not made a substantial showing of a denial of a federal right, and appellate review is therefore not warranted. Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005). The Court also finds pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith. Coppedge v. United States, 369 U.S. 438, 445, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). The Clerk of Court shall dismiss this petition and close the case.

SO ORDERED:

Dated:   New York, New York
         May 26, 2009

                              _____
                                      DENISE COTE
                              United States District Judge

Copies Sent To:

Marcus Brown
#01A1632
Clinton Correctional Facility
Box 2001
Dannemora, New York 12929


Ashlyn Dannelly, Assistant Attorney General
120 Broadway, 22nd Floor
New York, NY 10271